HARRIET H. PARNELL et al. *v.* C. A. PETROVIC—WILLIAM LAYSTER *v.*
C. A. PETROVIC.

The husband is prohibited by law from purchasing the property of his wife in a direct sale, and he
therefore cannot be permitted to acquire a title to her property indirectly for a price fixed before-
hand by the machinery of legal proceedings against the wife, resulting in the sale of her property.

The relationship of the husband to the wife forbids an arrangement by the husband with the creditors
of the wife, under which the title of the wife is to be divested by judicial proceedings against her,
and the property transferred to the agents of the husband.

The purchaser of the property of the wife, under an agreement between the husband and the purcha-
ser, that when the debts of the wife assumed by the purchaser should be paid off from the revenues
of the property, the property should be conveyed to the husband or his heirs, will not divest the
wife of her title, or enable the husband or his heirs to hold the property adversely to the wife and
her heirs.

APPEAL from the District Court of the Parish of Natchitoches, *Chaplin, J.*
*Moïse & Randolph, P. A. Morse,* and *A. N. Ogden & Stansbury,* for plain-
tiffs and appellants. *B. L. Hodge* and *W. M. Levy,* for defendant.

MERRICK, C. J. The plaintiffs in this action, and the plaintiff in the case of
*Layster,* tutor, against the same defendant, claimed title to the real estate, slaves
and movables in controversy, as heirs of *Mrs. Harriet H. Petrovic,* by her former
marriages. The defendant claims as sole heir of *Peter Petrovic.*

"*Peter Petrovic* and *Harriet H. Winter,* were married in the parish of Natchi-
toches in the year 1833. By a marriage contract, dated February 4th, 1833, the
property of the future wife was transferred to the future husband, and for its es-
timated value, twenty-five hundred dollars, and the balance in cash, he acknow-
ledged himself her debtor to the amount of eight thousand one hundred dollars.

"On the 4th of December, 1841, *Mrs. Petrovic* obtained judgment against her
husband for the sum of thirteen thousand dollars, for separation of property, dis-
solution of the community, &c. At a sale of the husband's property, made on
the 24th March, 1842, under a writ issued upon this judgment, *Mrs. Petrovic*
purchased 143 33-100 acres of land, two preëmption claims, a stock of cattle,
and *thirteen* slaves, for the sum of $6,645. And in satisfaction of the balance of
her judgment, her husband, on the 20th of July, 1842, conveyed to her nine
slaves.

"*Petrovic* obtained a discharge from all his debts under the bankrupt law.

"The property thus acquired was mortgaged by *Mrs. Petrovic* on the 20th of
July, 1842, to the Union Bank of Louisiana, for a loan of $12,268.

"In 1836, *Peter Petrovic* had mortgaged certain other lands and slaves which
he then owned, to *Lambeth & Thompson,* which mortgage they obtained an order
of sale upon, and on the 12th of Sept., 1840, the property so mortgaged was sold,
and purchased by *T. E. Touzin,* at the price of $34,000. Of this sum *Touzin*
retained $24,000, to be applied to mortgages having preference over that of
*Lambeth & Thompson. Petrovic* had borrowed $25,000 from the City Bank of
New Orleans, on the 1st of April, 1837, and *Lambeth & Thompson* had agreed
that the mortgage given by him to the bank, should have priority over theirs;
so that the property thus purchased was still subject to the City Bank mortgage,
as well as some others.

"On the 25th of August, 1842, *Touzin* conveyed the property, acquired as
76

just stated, to *Mrs. Petrovic*, she assuming the payment of certain debts, and more particularly the mortgage debt due the City Bank, just referred to, which amounted at that time to $20,000, and a debt due *A. Ledoux & Co.*, secured by mortgage on the said property, amounting to $19,495 23."

The City Bank of New Orleans having obtained a judgment against *Petrovic* and wife, upon the mortgage in favor of that institution, issued an execution (January 2d, 1847) against *Mrs. Petrovic*, and caused the property affected by said mortgage to be sold. The bank became the purchaser for the sum of $20,000, which left over $5,000 due the bank still unpaid.

On the 18th day of February, of the same year, 1847, the following agreement (which we copy at length) was entered into between *Peter Petrovic* and *Messrs. A. Ledoux & Co.*, of New Orleans :

" *Memorandum of an agreement between Messrs. A. Ledoux & Co., of New Orleans, and Peter Petrovic, of Natchitoches.*

" 1st. It is known and understood, that *Mrs. Harriet H. Petrovic*, wife of *P. Petrovic*, is largely indebted unto the City Bank of New Orleans, the Union Bank of Louisiana, and to *Messrs. A. Ledoux & Co.*—the true amounts will be hereafter ascertained by the parties.

" 2. It is known and understood that the several banks and *Messrs. A. Ledoux & Co.* have a mortgage upon all the lands and slaves belonging to *Mrs. Petrovic*.

" 3d. It is known and understood that the said banks have instituted legal proceedings against *Mrs. Petrovic* and her husband, and that the City Bank has sold, and the Union Bank is now proceeding to sell the lands and slaves respectively mortgaged to them, and that each bank will buy in the lands and slaves under her respective proceedings.

" 4th. It is known and understood, that when the banks shall complete the sales, that the said banks will sell the whole of the lands and slaves purchased by them at the sale of *Mrs. P.'s* property to *Messrs. A. Ledoux & Co.*—that the banks *are to reduce their debts down to a certain sum*, and that the City Bank will grant a credit of one, two and three years, without interest, to *Messrs. A. Ledoux & Co. for the payment of Mrs. Petrovic's debts*, and that the Union Bank will grant a credit of one, two, three, four and five years, without interest, to *Messrs. A. Ledoux & Co. for the payment of the debt due her by Mrs. Petrovic ;* and it is understood and agreed that *Messrs. Ledoux & Co.* are to assume to the said banks the debts due the said banks (after the deduction now in contemplation to be made on said debts by said banks shall be made) by *Mrs. Petrovic*, on the terms above specified.

" 5th. It is understood and agreed that the banks are to convey to *Messrs. A. Ledoux & Co.*, the whole of the lands and slaves, sold and purchased by them, at the sale of *Mrs. Petrovic's* property.

" 6th. It is understood and agreed, that when the banks shall have made their sales to *Messrs. A. Ledoux & Co.*, *Mrs. Petrovic* shall also convey to *Messrs. A. Ledoux & Co.*, the whole of the lands and slaves, and the appurtenances belonging to the plantation of *Mr. Petrovic*, left unsold by the banks, so that the whole of the slaves, plantation and appurtenances shall be in the name of *Messrs. A. Ledoux & Co.*

" 7th. It is understood and agreed that *P. Petrovic* is to work the plantation and slaves, in the name of *A. Ledoux & Co.*, for the term of five years, that is the years 1847, 1848, 1849, 1850 and 1851, and if at the end of the said five years, he shall, from the proceeds of the plantation, have repaid the *Messrs. A. Ledoux*

& Co. the amount which they shall have paid the said City and Union Banks, the debt and interest due to Messrs. Ledoux & Co., by Mrs. Petrovic, and the sum of four thousand five hundred dollars for their name, trouble, risk and care on account of their assumption and attention aforesaid, then Messrs. Ledoux & Co. shall and will reconvey to Mr. Peter Petrovic, or his heirs, the whole of the said slaves, land and appurtenances, free from all incumbrances.

" 8th. It is understood and agreed that if Mr. Petrovic fails to meet the installments as they shall severally become due to the banks, the payment made to the banks by Messrs. Ledoux & Co., shall be considered in the nature of advances made for Mr. Petrovic, and he shall allow to them the usual commissions of two and a half per cent., and interest at eight per cent. on such advances, and to form a portion of the aggregate debt to be repaid in the five years, as above mentioned.

" 9th. It is understood and agreed, that every bale of cotton made on said plantation is to be shipped to the house of A. Ledoux & Co. by Mr. Petrovic, any time they may order it, to be sold by them ; that they are to be allowed the usual commission of two and a half per cent. for selling and charges for their troubles, and that the net proceeds, after deducting expenses of plantation, shipments, sales, &c., &c., are to be by them applied in liquidation of the above debts, and that the same are first to be applied in payment of the debts arising from the bank debts then due, and when they shall be discharged, in payment of the debt now due Messrs. A. Ledoux & Co., and the interest thereon, and in all cases to the interest before the capital.

" 10th. Messrs. A. Ledoux & Co. are to furnish the plantation with the necessary supplies for carrying it on.

" 11th. Mr. Petrovic is to be allowed to draw from Messrs. A. Ledoux & Co., annually, a sum of money not to exceed five hundred dollars, which is to be repaid by Mr. Petrovic, and commissions of advances and interests of eight per cent. charges thereon, as above mentioned.

" 12. Mr. Petrovic is to be allowed to employ one overseer on said plantation, at a salary not exceeding four hundred dollars.

" 13th. On that portion of the debt to be repaid to Messrs. Ledoux & Co., known as the two bank debts, no interest is to be paid by Mr. Petrovic, except when advances are made, as is mentioned in article eight of this agreement.

" 14th. This agreement is dependent upon the banks carrying out their agreement with Messrs. Ledoux & Co., that is, if the banks fail to convey the property to Messrs. Ledoux & Co., then this agreement is not binding upon either of these parties.

" 15th. When the whole conveyances shall be completed, then these parties are to enter into a notarial act, of which these articles are to be the basis.

" 16th. It is understood and agreed, that in the event of overflow or the ravages of the cotton worm, Mr. Petrovic shall fail to make a crop of cotton, and it be thought advisable by Messrs. Ledoux & Co. to remove the hands, slaves and other appurtenances on the cotton plantation to the sugar region, for the culture of sugar, then Mr. Petrovic is to comply with their request.

" Signed in duplicate at New Orleans, this 18th day of February, 1847.

(Signed)               " A. LEDOUX & Co.

" P. PETROVIC.

" Attest : GEORGE POLLOCK, D. F. ROYSDON."

Accordingly the Union Bank of Louisiana acquired the title as contemplated, and afterwards, on the 1st of April following, both banks made transfers of the

PARNELL
v.
PETROVIC.

property acquired by them to *Messrs. A. Ledoux & Co.* The City Bank for $21,000, on the terms agreed, viz, one, two and three years, and the Union Bank for $14,000, payable in 1, 2, 3, 4 and 5 years. On the 6th day of April, *Mrs. Petrovic* sold seventeen slaves, (mostly children,) sixteen head of mules and horses, nine yoke of oxen, three hundred head of hogs, and twenty-five horned cattle, to *A. Ledoux & Co.*, for a price purporting to be $14,253 16, paid in ready money out of the presence of the notary.

*Petrovic* took charge of the whole property transferred to *A. Ledoux & Co.*, and managed the same to the time of his death in 1851, *Mrs. Petrovic* having died some months previously.

It seems that the defendant, *Charles A. Petrovic*, after the death of his father and mother, went into the possession of the property, and managed the same until the 9th of April, 1853, when *A. Ledoux & Co.*, reciting the previous proceedings, but assuming that the contract was made for the benefit of *Peter Petrovic* and not his wife, transferred and conveyed to *Charles A. Petrovic*, as sole heir of *Peter Petrovic*, the property in controversy.

It is, therefore, evident that the controversy turns upon the construction placed upon and the effect to be given to the contract between *A. Ledoux & Co.* and *Peter Petrovic*, and the proceedings in execution of the same.

Did that contract and those proceedings under it, have the effect of divesting *Mrs. Petrovic* of the ownership of the property, and convey the same through the agency of the banks and *A. Ledoux & Co.*, to *Peter Petrovic* and his heir?

The sales to *A. Ledoux & Co.* were not intended to vest in them the absolute ownership of the property. They, *Ledoux & Co.*, took the title to the property, if at all, as agents, as is quite evident from the perusal of the whole instrument. Are they to be considered as the agents of *Peter Petrovic* or his wife?

A consideration of the first six clauses of the contract shows (as has been observed by plaintiff's counsel) that the parties had already contracted with the City Bank and the Union Bank, that they would aid these parties in their views, by buying the property and conveying the same on credit as mentioned in the agreement. It is further apparent, from the sixth clause of the agreement, that *it was agreed and understood* that *Mrs. Petrovic* should convey to *Messrs. A. Ledoux & Co.*, the whole of the lands and slaves, and the appurtenances belonging to the plantation of *Mrs. Petrovic*, left unsold by the banks. It would, therefore, seem, that there had been a previous understanding with *Mrs. Petrovic*, as well as the banks, that the sales should take place, and the banks become the purchasers of the property mortgaged, and that she would perfect such sales as they should make to *A. Ledoux & Co.*, by transferring the residue of the property to them.

When, therefore, she completed the conveyance, " so that the whole of the slaves, plantation and appurtenances were in the names of *A. Ledoux & Co.*," did she not conclusively show, that she had ratified a contract to which she had previously given her consent and became a party?

But if she had signed the contract of the 18th of February, 1847, at the time of its execution, it would have vitiated the same, if considered as a sale to her husband, because as the husband is prohibited from purchasing the property of his wife in a direct sale, he cannot be permitted (for a price fixed beforehand) to acquire indirectly and by the machinery of legal proceedings, what he could not do directly. C. C. 1784.                                                      .

But suppose it be considered that the contract of the 18th of February, 1847,

was entered into without the knowledge of *Mrs. Petrovic*, and with the intention on the part of *Petrovic* of acquiring the property for himself. It would then appear that he had entered into a contract by which judicial sales of his wife's property were to be made, at which it was the interest of the contracting parties that a fair competition among the bidders should be prevented. Not only this, but the wife herself was to be required to make a sale of the residue of her property to the agents of her husband, and thus to the husband himself. The relationship of the husband to the wife, forbids proceedings on his part so prejudicial to her rights. C. C. 1886, 1889.

But it is said, that in the act of sale from *Mrs. Petrovic* to *A. Ledoux & Co.*, she was allowed a credit for the whole amount of her indebtedness to them, arising from the *Touzin* debt.

Whatever consideration may have been named in the act of sale, it is clear that the same was by the agreement of the 18th of February, 1847, to be paid back to *Messrs. A. Ledoux & Co.*, out of the revenues of the wife's property, her lands, the labor of her negroes and mules, and the care of the overseer.

How can it be said that they, or *Petrovic*, paid a price for this property, when *Ledoux & Co.* were to be refunded the whole amount, debt, interest, commissions, and $4,500 besides, out of the revenues of the property?

Indeed, the whole contract, were it to be considered as made on behalf of *Peter Petrovic* and valid, would have the effect of transferring to him the entire property of *Mrs. Petrovic*, without any equivalent, and without any trouble on his part, save that of passing the revenues through the hands of his agents, *Messrs. Ledoux & Co.*

It does not appear to us that the proceeding can be sanctioned. *Messrs. A. Ledoux & Co.* must be considered as holding whatever of title they acquired, as the agents of *Mrs. Petrovic*, the only person for whom they could acquire the title under their contract. *Peter Petrovic* would not have been permitted to derive any advantage from a transfer made by *Ledoux & Co.* to him of the property in controversy. His heir cannot be in a better situation than himself.

But it might perhaps be supposed, that whatever the conclusions of the court should be in regard to the property sold by the Union Bank, after the contract of 18th of February, 1847, and the sale of *Mrs. Petrovic* to *Ledoux & Co.*, that the title of *Mrs. Petrovic* having been completely divested to a portion of the property before the date of the contract, *Ledoux & Co.* acquired a perfect title from the City Bank to such portion of the property, and consequently conveyed the same to the defendant.

There are two answers to this position:

1st. A fair construction of the first clause of the contract shows that the whole City Bank debt was considered (notwithstanding the sale) as due that institution, and by the fourth clause, it was to be reduced and then paid by installments. The *actual property* in the land was, therefore, in the debtor of the bank, *Mrs. Petrovic*, and the title was only held by the bank as security.

2. The illegal stipulation in the contract (if it be viewed as a sale to the husband of the other portions of the property,) vitiated the whole contract as such. C. C. 1886.

The sale, therefore, from *A. Ledoux & Co.* must be held to enure to the benefit of the heirs of *Mrs. Harriet H. Winter*, of whom the defendant is admitted to be one.

It is agreed by counsel, that this court shall only pass upon the title of the

parties, leaving all other questions for future adjustment. The decree accordingly will be so pronounced.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed. And we do now order, adjudge and decree, that the property in controversy be declared to belong to the succession of *Mrs. Harriet H. Winter*, deceased, late wife of *Peter Petrovic*, deceased, and her heirs; and that the plaintiffs be recognized as two of said heirs, and each, as well as the defendant, *Charles A. Petrovic*, entitled to one undivided fourth part of her said property. And it is further ordered, that this suit be remanded, in order that proper parties be made, that an inventory be taken, and that a partition be ordered, and all other needful proceedings be had according to law; the defendant and appellee paying the costs of the appeal.